216026 Westfield National Insurance vs. Quest Pharmaceuticals, Inc. and 216043 Motorist Mutual Insurance vs. Quest Pharmaceuticals, Inc. Oral argument to be 30 minutes for the appellant and 15 minutes for each appellee. Mr. Coltharp for the appellant. May I approach? My name is Jason Coltharp. I'm here on behalf of Quest Pharmaceuticals. I would ask to reserve eight minutes for rebuttal. The damages alleged in the underlying litigation against Quest include cost of treatment and services for citizens suffering from opioid-related addiction. These damages constitute damages because of bodily injury and they are covered by both the Motorist and Quest policies. At the very least, those damages potentially, possibly, or might be because of bodily injury triggering Motorist and Quest's duty to defend under those policies. When you say damages are because of bodily injury, the request is really for economic damages in the underlying litigation, correct? They are. The damages are because of bodily injury because they are within the chain of causation between alleged wrongful act and ultimate injury. You have the alleged act of overdistribution of opioids or failure to monitor, that sort of thing, that leads to bodily injury in the form of addiction by the individuals, which leads to the societal costs and healthcare costs that the underlying plaintiffs  incur. Without the bodily injury, there would be no harm. The damages are because of bodily injury. Certainly, if the claims were more individualized, that is, if the governmental entities or the healthcare providers that are making the claims in these cases were claiming that a specific individual suffered a specific harm and they incurred specific damages because of that harm. For example, if an individual received treatment, they said we spent X number of dollars on treatment, X number of dollars on incarceration for this person, there would be no question that that was because of bodily injury. What about the requirement that the bodily injury or property damage is caused by an occurrence? I think occurrence is defined as an accident, is that correct? Yes, and I think that is, I don't believe that is an issue that has been argued either below or here. I don't know if that is before the court at this point. You are saying we don't need to look to that language of whether it is an occurrence or not? Correct. I guess to return to the, well, I think that from Quest's perspective, the overuse of opioids and the bodily injury that results is an accident because they certainly didn't intend for that to happen. So the accident is over a long period of time? Well, potentially, it could be a single ingestion or it could be over a long period of time. What is Quest claiming the occurrence is here? Well, and again, this is not an issue that has been before the court or has been argued in this case, so it is not one for which I have spent a lot of time preparing. Well, I don't want to make you say something today if you are not ready to say what it is. And as I said, that is not an issue that has been at issue in our case, so it is not one for which I have prepared today. If you would like additional briefing on that, I am certainly happy to provide that and can answer questions as best I can, but it has not been part of our case to this point. Okay. And so I guess to return to the nature of the injury, so simply because we have claims that individualized would be unquestionably bodily injury, the fact that they are asserted on a macro scale rather than an individual scale doesn't change the nature of those damages, their claim. Their bodily injury, as it relates to one individual, they remain bodily injury as it relates to a larger scale of multiple individuals. And the fact that a public nuisance cause of action, if it is ultimately viable for this type of claim, which is an issue that is still up in the air, the fact that it does not require individualized proof as to individualized damage by each individual user does not change the nature of the damages alleged and that the damages, because they arise from bodily injury are because of bodily injury. What Kentucky authority are you relying upon for, I mean we are interpreting Kentucky law, correct? We are. What is your best case or cases would you say for your position? Well, I think that there are cases that have dealt with, well there is a single unpublished case that we cited that has dealt with the distinction between damages because of bodily injury versus for bodily injury. And that one is, excuse me, is Hoskins versus Kentucky Farm Bureau. Otherwise the issue has not been directly addressed by any of the Kentucky courts. If it hasn't been addressed, is this a case that really should be perhaps certified to the Kentucky Supreme Court? I wouldn't disagree if that was the court's preference. I think that this is certainly an unsettled issue that has divided other jurisdictions that have addressed it. I came into this case on the appeal and we felt that once it was on appeal, that it was a little more difficult for us to request certification, given the procedural posture, but I would not argue that this is an inappropriate case for that. What about the Seventh Circuit case that you rely on, which applies Illinois law, which seems to be different in terms of how it construes because of and for as opposed to arising out of, things like that. What persuasive authority do you think this H.D. Smith provides here? I think the rationale of that case is appropriate and I think the rationale of that case carries forward to this one. I guess that Illinois has more authority on the issue, but I would disagree that Illinois and Kentucky would take differing views of the terms because of and for. I think those are words that within their plain meaning, as understood by any individual and perhaps any grammar school English teacher, have different meanings. Because of is a conjunctive phrase that invokes a causal connection, for it invokes equivalence between items. To use the example in the Hoskins case, that court determined that damages because of bodily injury included both a motorcyclist's injury claim and his wife's consortium claim, but that damages for bodily injury sustained on a motorcycle barred his claim but did not bar the wife's consortium claim, because of that difference in language. But didn't you have specific allegations of bodily injury involved, I think, mother and child or mothers and children, which you don't have in our case? Is that a significant distinction, if I'm right? Unless I'm mistaken, I think you may be recalling the Medmark case. It did, and I think Medmark was decided appropriately as to the facts of those cases, but the logic of that case does not carry forward to these types of cases, which, of course, the H.G. Smith case was specifically applicable to opioid litigation. And the Medmark case involved claims, I think, by mothers that the product, the baby bottles they had been using, were unsafe and unusable. And they made solely economic arguments, did not claim that the bottles had harmed their children, did not claim that they incurred any cost because of medical care or anything of that nature. It was solely, we bought these, we can't use them, and so we're making a claim for that. And that is a situation apart and distinct from what we have here, where the claim is based upon the ingestion of these medications and at least in part on the medical consequences of that. And similarly, to go back to the distinction between because of and for, the H.G. Smith case also talks about an example of someone who is paralyzed in a car wreck and says that damages for the paralysis would be both because of and for bodily injury, but for example, the costs of making the home wheelchair accessible would be because of bodily injury but would not be for bodily injury. So again, it's another example of a distinction between those two terms. And I guess, let's see. And it's important to remember as well that as the drafter of these policies, both Motorists and Westfield could have expressly excluded claims brought by governmental entities, which was done in the Century Indemnity versus Marine Group case that we cited out of Oregon, and was discussed by the lower court in the Rite Aid versus ACE American case, where they discussed examples of where policies expressly excluded governmental entity claims, which could have been, but was not done here. They could have also expressly limited their coverage to claims brought for bodily injury, as was discussed in the Farmers Texas versus Geneva case out of Texas. And there's been, I guess there's an argument made by Westfield, but not, I don't believe it was made by Motorists, although their policies are identical, that somehow the fact that they have a provision in there that talks about damages for bodily injury somehow makes the assertion that the policy covers damages because of bodily injury somehow equates those terms. And I think that, again, the plain meaning of those terms to the lay user would be different, and an insurer is not permitted to change the plain meaning of those words by using different words at different places without specifically defining those terms in a way that would be understandable to the common user. And in the policies, they specifically talk about damages because of bodily injury with respect to coverage A, which is the bodily injury coverage, coverage B, which is personal and advertising injury coverage, and then talk about damages for bodily injury in connection with the medical payments coverage. And that distinction of language is consistent with the way that those different types of coverages tend to apply, in that med pay coverage, other no-fault coverage is typically limited to lost wages and medical expenses alone, not damages arising from those things, whereas the bodily injury coverage, personal and advertising injury coverage is typically broader and includes things beyond simply the bodily injury. And again, I think the provision that Westfield points to in connection with that argument is one where it says there is no duty to defend a suit seeking damages for bodily injury to which the insurance does not apply. And because it defines suit as a civil proceeding in which damages because of bodily injury to which insurance applies are alleged, that provision is entirely redundant and circular, in that if there is a suit, as defined by the policy, it is inherently a lawsuit, a civil proceeding claiming damages because of bodily injury to which the insurance applies. It inherently cannot also be a suit for which bodily injuries are not, damages from bodily injuries are not claimed. And so I don't think that that argument holds water, and I imagine that's why it's not been very commonly alleged in the other cases. So how do you distinguish the Schneider, this Kentucky Central Insurance Company of East Schneider case? Because it seemed like the Supreme Court in that case was equating damages because of bodily injury with damages for bodily injury. Well, again, I think that was, there wasn't an express comparison of the two terms. It was simply that they used because of bodily injury several times in the case, and then in one sentence said for bodily injury. So it's not as though they were specifically examining that issue and determined that those two words are similar, or those two terms in the insurance context mean the same thing. In addition, that case was deciding whether punitive damages were damages for bodily injury. And so the focus of that was that the bodily injuries were not, were not a causal connection, or a causal prerequisite for recovery, but were merely the context in which punitive damages were alleged. And as you know, those damages are fundamentally different from compensatory damages, because compensatory damages seek redress for harms. Punitive damages are not entirely untethered from the underlying claims, but are awarded not to compensate, but to punish and deter. And so the distinction there is that that case was decided in the context of a punitive damages assessment, which is, again, divorced from the actual damages suffered by the plaintiff, and that those terms were not essential to the case, and there was no express comparison made. Similar to that are the, excuse me, the Aetna v. Commonwealth case, in that that case equated damages because of property damage as covering claims arising out of property damage. And again, although that case, like the Schneider case, was not directly determining the difference between damages because of and damages for injury, it did define that term as being claims arising out of property damage. And that was a case involving site remediation, whether site remediation could constitute property damage under a policy. I would think Aetna supports your position. It does, it does, but the point is that those two cases, at least taking the Appelese position that the mere use of the word for on one occasion in the case constitutes a decision that those are the same, those two decisions conflict with each other. I asked you the question earlier in your argument whether there is any Kentucky authority that supports your position. And you gave me the Hoskins case. But these other two cases, are they not relevant to the issue as well? They are, Your Honor. I was speaking in terms of cases that had directly addressed the issue and supported our position. These cases certainly support our position, but they have not directly decided this because of or for distinction. And so that would, we believe that Aetna... Can we not rely on these cases to reach a decision here as to what Kentucky law is? Oh, we absolutely can. Perhaps I misunderstood the question. I was answering it in terms of directly on point cases, and I think there is just the one that is directly on point. There are cases that support our position, including the Aetna case, the Zerabadaki case from 1993 that observed that there is no critical distinction between the terms but for and because of and differentiated those terms from the phrase solely because of. And also the Norton Healthcare versus Disselkamp case that we cited where it determined that because of standards satisfied by but for causation. Again, they are equating because of with causation but for. It seems to me that this whole argument is perhaps because it is in your interest to make the argument in this way, but it seems to me that this argument is totally untethered from the realities of this particular case. I mean, these are cases, these two cases are brought by... municipalities and they are seeking, they are asserting various claims. Well, not just municipalities but other entities. Their claims include violations of RETO, state statutes, common law claims, nuisance and negligence, and the damages are significant expenses for police, emergency health, prosecution, corrections, rehabilitation and other services. And yet we are somehow not... I mean, what's central to this case is whether a policy that covers bodily injury damages can be used to compensate for these kinds of damages. And I guess it's probably in your interest to avoid the reality of what the lawsuit is about, but that's really the key starting point, isn't it? Well, it is in the sense that you look to the underlying allegations in determining whether coverage applies, but it also, you look to all the allegations and if one among many allegations is covered, then coverage applies at least as to that one allegation and the duty to defend applies as to all. So if you had to pick one of those out, which one would you pick out? I think it would be the public nuisance claim and the fact that there are damages alleged from dealing with people who have been affected by opioid addiction, both in the penal context and in the rehabilitation and the medical care context that these governmental entities are alleging. You think that's a public nuisance? Well, the question here is not whether the claim is valid, the question is whether it's insured and whether it's something that needs to be defended. I'm sorry, that's just what popped into my head. I certainly appreciate that and don't disagree that every claim within what's alleged by these governmental entities would be covered, but I think as the case law in Kentucky and elsewhere has held, that if there's one covered claim, then the duty to defend applies to all. And so we're here because the court below decided that there was neither coverage nor duty to defend and I think the duty to defend is broader and would encompass the entire case, even if the court later determined that some of those claims are not covered by insurance. Simply the fact that one or several of those claims are covered, or as the language of the case law insists, that they potentially, possibly or might be covered, then the duty to defend applies. Because of the public nuisance claims and the underlying facts supporting those claims, the duty to defend does in fact apply here. I just have one really minor question that goes to ethnic casualty. And just wondering if that case is somewhat distinguishable. Instead of dealing with causation, it really dealt with whether the cleanup costs that were subject to the claim qualified as damages within the meaning of the policy. So a little bit different from the situation here where you've got these economic claims that are arguably connected to drug addiction and opioid epidemic. I'm sorry. I don't disagree with that. It is not directly on point with this situation. However, it is like the Schneider case. They are both addressing whether the claims are the type of damages alleged. And so the distinction between because of and for in both Schneider and Aetna is not an issue that is directly before the court. And so they are both helpful in guiding us to the conclusion that we think Kentucky courts might reach. But neither one is directly dispositive of the issue. Thank you. And I'm happy to continue, but I think I've covered the points I intended to cover. So unless there are questions. Less is more. Thank you. Good morning, Your Honors. The issue before the court is Kentucky law. And one of the most significant developments that we've seen in the last several months hasn't come from Kentucky. It's come from two other state Supreme Courts. But Quest's argument depends on redefining the term because of, to me, arising out of, or having any causal connection to. That is because it forthrightly admits in its brief that it is undisputed that the underlying claims do not seek damages for bodily injury. Currently, the only way it can prevail is to define because of more broadly, as it says, any causal connection. But the resolution of this question is now very straightforward with the recent decisions of the Supreme Court. The Supreme Court of Ohio and Delaware. And that is because with the Masters decision in Ohio and the Right Aid decision in Delaware, we now have two thorough and thoughtful analyses of this issue from other state high courts on the very issue before the court today. And its resolution, the state law in those states is fundamentally the same as Kentucky's. Those states' laws, like Kentucky's, interpret insurance policies like other contracts and give them their plain meaning. When a provision is susceptible to two reasonable interpretations, one favoring coverage, the other not, a court will give the interpretation favoring coverage. When a policy is not ambiguous, however, the language is enforced as written. And when the duty to defend is at issue, courts compare the allegations of the underlying complaint to the terms of the insurance policy and what the facts allege potentially may lead to a liability covered by the policy the insurer has a duty to defend. That's the law in all three states. Masters and Right Aid considered the same sorts of underlying suits at issue here, which made the same allegations under the exact same policy language. And both cases explicitly or implicitly followed and agreed with the district court decision in these two cases before the court today. In Masters, the court explicitly cited our case before you today, the district court's decision. And they rejected all the authority to the contrary, including the authority Quest relies on. So the question for the court is whether the Supreme Court of Kentucky would accept the thoughtful and persuasive analyses of two other sister state courts on this issue, especially when those courts decided the issue by looking to the district court decision here decided under Kentucky law. And found it was correct. The 7th Circuit's interpretation of Illinois law, how do you distinguish that case? The H.D. Smith case, Your Honor, didn't decide the issue under Kentucky law, but even under Illinois. Ohio and Delaware didn't either. You know, Supreme Court's examined the 7th Circuit decision. What's the difference between Illinois law and Ohio law and Delaware law that you think you would distinguish? Well, there is no difference. The H.D. Smith didn't correctly apply Illinois law. I think the 7th Circuit failed to honor precedent from Illinois on this issue. Diamond State and Bituminous, two Illinois appellate court decisions that said economic loss, a case seeking economic loss with bodily injury in the background does not seek damages because of bodily injury. It didn't cite either of those two cases. But those two cases were considered, cited multiple times, affirmed by the Supreme Court of Illinois in Elgin. Well, mine is 7th Circuit is wrong in your view. Well, yes ma'am. However, you don't have to conclude that. No, we don't. I mean, we just have to decide the issue for ourselves. But if you want us to look at persuasive authority, your position is... It was not persuasive. There are serious problems with the analysis of that case because it didn't consider on point state law. It was bound to follow under Erie. That state law, those state cases had been affirmed by the Supreme Court of Illinois. They're Illinois law. They were not considered by H.D. Smith. Instead, H.D. Smith turned his decision primarily based on a hypothetical opposed at oral argument, the mother and child hypothetical and equated claims by government seeking to recover on behalf of citizens with the mother seeking to recover cost of care on behalf of an injured child. And as both Masters and Rite Aid recognize, that analogy doesn't fit. And the biggest problem, of course, is that a mother seeking to recover cost for care of a child has to prove the child was injured and has to prove the damages associated with the child's injury. The entities here do not seek to prove that any specific person was injured or the cost of damages with respect to that injury. They seek their aggregate economic injuries, the social services and the increased operational costs, as they say, for running their hospitals and for delivering care. They don't seek to step into the shoes of the injured parties and assert their rights and assert their damages as subrogate or as assignee of their claims. They say specifically, we're asserting our own rights, not derivative of any other person, of any citizen, not through subrogation and not derivatively. So that distinguishes our case from the hypothetical used in H.D. Smith. So the hypothetical is flawed and therefore should not be the basis of decision. However, when we ask what the Kentucky Supreme Court would do with this case, we don't have to guess. We have the Schneider decision. And in Schneider, the Supreme Court itself considered language damages because of bodily injury and an insurance policy. And it thoroughly considered the meaning of that term, holding specifically that because of bodily injury, of can mean arising out of. It rejected that. It rejected that assertion. In that case, Ms. Schneider was rear-ended by another car, uninsured motorist. She obtained compensatory damages from her own insurer under the uninsured motorist provision of her policy, but she wanted to recover punitive damages as well. But the policy covered damages because of bodily injury. And the court specifically analyzed whether such damages were because of bodily injury or because of egregious conduct on behalf of the other driver. And it held that since punitive damages are not compensatory for the insured or for the victim, they were not because of bodily injury. So they were not within the coverage. And there's any doubt about whether the court was making a distinction between because of and arising out of. At the end of the opinion, you see it distinguishes a prior opinion of its own court, the Continell case, where the court said different language that is by reason of an accident resulting in bodily injury. The court said that could include arising out of, but the language here, because of, that's not arising out of, and therefore the punitive damages were not because of bodily injury. They were because of the other driver's conduct. So there really could not be a more clear rejection from the Supreme Court that because of can be loosely interpreted as arising out of. What about the specific terms of the insurance contract itself? I know one paragraph uses because of, arguably interchangeably with for bodily injury. Quest takes some exception with your interpretation of that. Would you address that? We look at the terms of the contract first, as I understand it. Absolutely, Your Honor. And we interpret it in context. And as you point out, and as pointed out in both Masters and Ryday, those terms are used interchangeably in the insurance policy. Because they mean basically the same thing. And that's the holding of the Supreme Court of Kentucky and Schneider. Because of was used in that policy. But the court said even though punitive damages would not have been awardable, but for bodily injury suffered by the victim. That wasn't enough. What has to happen, what has to apply for because of to provide damages in that context is because those damages have to be awarded for or because of compensation to the injured party. And the punitive damages are awarded because of societal interest in punishing the wrongdoers. Different causation, different interest. And we have the same thing going on in the underlying cases. Now to answer your question, the policy uses those terms interchangeably because they mean functionally the same thing. And in the first property management case, also cited in our briefs, another Kentucky Supreme Court decision, that case involved interpreting the term because of in a jury instruction. And the jury instruction in that case had to do with termination for pursuing a worker's compensation claim. And the Supreme Court said, well the causation that has to happen, what the judge should have said, the Supreme Court said, is that the decision to terminate should be because of a substantial motivating factor. I'm putting this the wrong way. The decision to seek worker's compensation insurance should be a substantial and motivating factor but for which the employer would not have terminated. But you see what the courts did there. The jury instruction said because of and that was correct. That is equated because of with substantial and motivating factor but for which the event would not occur. So there is a clear indication from the Supreme Court but for causation is not sufficient. The causation has to be substantial and motivating factor. It has to be the reason. It has to be the dominant influence on the event that follows. And that accords with the language of the Supreme Court of the United States in the Gross case, ADEA case, essentially saying the same thing in the same context. And in preferred automotive, decision of this court, I'm sorry, a panel, it's unpublished. Chief Judge Sutton, under Kentucky law, dealt with because of bodily injury and said that in that case there was a misrepresentation about the condition of a car. It had been damaged but it was misrepresented never to have been damaged before. And when the dealer was sued for the misrepresentation and sought coverage for that, Chief Judge Sutton said, no, this claim is because of your misrepresentation. It's not because of damage to the car. So again, even in this unpublished decision, the courts already agreed that because of it doesn't mean before. Obviously, had the physical damage not occurred to the car, there wouldn't be a claim for misrepresentation, but that wasn't the basis of the claim. Now, courts most strongly relies on Aetna versus Commonwealth. We've talked about that a little bit. But as you pointed out, Judge Cole, that case doesn't discuss what because of means. It discusses the meaning of damages. And in that instance, the response cost to clean up a specific property was held to be damages because of property damage, but there's a specific remedial effect there or sought there for specific property damage. And it's not a because of versus arising out of case. So we have a clear roadmap to answering the question here. Would the Supreme Court of Kentucky hold that because of means arising out of or related to or causally connected to? The answer is no. We know that because of Schneider and the other cases we've discussed. Your Honor, Quest makes an argument about estoppel in its briefs. We've addressed that in our brief. I'm happy to answer any questions about that. But if there are no questions, the judgment of the District Court should be affirmed. Thank you, Counsel. Good morning. Good morning. May it please the Court, Counsel. My name is Richard Garner on behalf of Westfield. And with leave of this Court, we've structured a combined oral argument with the apologies to avoid repetition and present a combined coherent argument. So the scope of my argument will be limited. That said, I'll answer any questions that arise from the briefs, any questions that arise about coverage for the policies. But in the time that I have with the Court, I'd like to spend time in two areas. First is the express language and structure of the policies, which, Judge Cole, you said that's where we need to start. You're exactly right. And the second is the tort context of the policies and the impact that that context has on interpretation of the policies. In doing so, I'll join my colleague in briefly addressing the confluence of analysis of the nine state Supreme Court justices that decided Rite Aid and Masters Pharmaceutical case. We think that provides an excellent roadmap. But I want to start somewhere that's a little more simple that I think is going to help the Court with respect to framing the issues here. And it's basically four concessions made by Quest in the briefing. First one is that the Motorist and Westfield policies are essentially the same. And they're also essentially the same as the policies that were in Rite Aid and Masters Pharmaceutical. So if there's any difference in language, slight difference and so forth that the Court would look at, it's immaterial. There's nothing that's been argued that there's any significant difference between the policies. The second thing is that the underlying lawsuits are all essentially the same to each other. And they're essentially the same as the lawsuits in Rite Aid and Masters Pharmaceutical. Now remember, we ran in the district court, both of the insurers. There has been no effort on appeal by Quest to distinguish between the allegations of the specific lawsuits. But rather Quest lumps them all together, treats them all together as the other courts have, including Rite Aid and Masters Pharmaceutical. Number three, Quest concedes that the governmental plaintiffs are not seeking damages directly, derivatively or as a subrogee for bodily injury to any particular person. I think this is a really important point right here, because Judge Bush, when you were asking or having a conversation with counsel, there was some suggestion that what they're doing is they're aggregating a bunch of bodily injury claims and bringing them together, kind of like when we do a CAFA analysis or something like that. That's not what's going on here at all. We're talking about economic losses that are being aggregated, not bodily injury claims. We have no idea who these people are, no idea what their injuries are, no idea about anything. We only know what the governments say their responses are for increased jails, increased police, increased cost of hospital administration and those things. Number four, none of the damages, the other concession, none of the damages sought by the plaintiffs would qualify as damages for bodily injury within CGL companies. So there's an express concession made by Quest that if for and because mean the same thing, there aren't any damages because of for, and so ipso facto there would be no damages because of. Now this last concession is really important because, as this Court is aware, Quest's entire appeal is predicated upon a two-step analysis. The first step is that Westfield and motorist policies extend coverage to damages because of bodily injury, which is broader than for bodily injury. And the second step that Quest argues is that because of bodily injury can be interpreted broadly enough to include the relief sought by the governmental plaintiffs. Of course, for the reasons I'm about to explain, this two-step analysis is just wrong. So let's start with the plain policy language and the structure of the policy. Now as a preliminary matter, Quest doesn't argue that either because of or for bodily injury are in and of themselves ambiguous, nor should they. This is standard policy language that's been used for decades around the country. It's interpreted every single day in courts across the country without a problem. But when we go to their two-step analysis, this is where they go wrong. The policies in this case do not provide coverage for damages because of bodily injury rather than for bodily injury. As the conversation was with counsel before, the policies use the terms because of bodily injury and for bodily injury interchangeably. I want to give you an example. If you look at page 31 of our brief, and I'm talking about the electronic pages, not the page numbers, so the page number at the top of the briefs, we give five specific examples in the Westfield policy, the most poignant of which is the insuring agreement itself. And the definition or the sentence that counsel referred to, which is that Westfield will have no duty to defend the insured against any suit, which is defined as because of bodily injury, seeking damages for bodily injury, to which this insurance does not apply. But this isn't the only place, as you see on that same page. Under employees and volunteer workers, we see that there's a limitation on insured status for those people for bodily injury. Under supplementary payments, we see that such payments, those are defense costs and so forth, that they won't be deemed to be damages for bodily injury. Under the definition of insured contract, we see an expansion of Westfield's liability and motorist liability for contracts in which Quest assumes the tort liability of another person to pay for bodily injury. Look, if there is a universe in which there's some meaningful distinction between because of bodily injury and for bodily injury, it's not this universe. It's not this jurisdiction. It's not these policies. And there's nothing that Quest has provided to this court which would suggest otherwise. At footnote 42 of the Rite Aid case, the Supreme Court of Delaware says these terms are being used interchangeably. At paragraph 9 of the Minister's pharmaceutical case, you have the same policy provisions which are listed here, which again shows that they're being used interchangeably. And remember, Quest has conceded that there are no allegations in the underlying cases that would qualify as damages for bodily injury. These words mean the same thing in this context. If there's some other context where they mean something different, it's not relevant to what we're talking about here today. This alone undermines the entire predicate of Quest's appeal. It alone should be a reason to affirm the district court, but there's more. The structure of the policies does not allow for an interpretation of bodily injury which is not particularized to an individual. The best example of this was given by the Supreme Court of Ohio in the Minister's pharmaceutical case. This court will recall that the difference between the appeal that I'm involved in and that Modris is involved in is that we have a reliance upon an alternative argument for affirmance based upon the loss in progress or the known loss provisions. I don't want to talk about that in detail today unless the court has questions. It's at pages 61 to 64 of our brief, and the provisions are found at page 23. I want to look at these provisions because of what they mean for purposes of the insurance agreement and what Masters Pharmaceuticals said. On page 23 of our brief, this is the important part when we look at this language. This insurance applies to bodily injury only if 1. The bodily injury is caused by an occurrence. 2. The bodily injury occurs during the policy period. 3. The bodily injury wasn't known to have begun or to have already happened prior to the beginning of the policy period. Now, all of this refers to the bodily injury. When the Supreme Court of Ohio looked at that, this is what they said at paragraph 31 of their decision. The repeated use of the phrase, the bodily injury, suggests that the damages sought and the underlying suit need to be tied to a particular bodily injury sustained by a person or persons in order to invoke coverage under the policies. If the phrase were interpreted as broadly as Masters argues it should be, and as Quest argues in this case, it would be rather difficult to determine whether the bodily injury occurred during the policy period was caused by an occurrence or occurred in whole or in part prior to the policy period. It went on at paragraph 34 of the decision and it said, you know, if we do what the insurer is asking us to do in this case, then we have to interpret because of bodily injury really broadly in the insurer agreement and then really narrowly in the known loss provisions. And that creates a problem because when we have the same term being used in the same contract in the same context, it's supposed to have the same meaning throughout the policy. And so we actually violate a fundamental tenet of contract interpretation if we do that. And so it went on and concluded in paragraph 33, the bodily injury alleged in the underlying suit, therefore, must be a particularized injury in order to make the comparison necessary under the loss in progress provisions. Therefore, the Supreme Court held, as a whole, that bodily injury must be particularized to a specific person. Now based upon this plain language and structure, both the Supreme Court of Delaware at page 241 of that decision and the master's pharmaceutical case at paragraph 36 of that decision held this. And this is the crux of this case. That there are three categories of claimants that can recover because of bodily injury. Number one, those who actually suffer bodily injury. Number two, those seeking to recover as derivative claimants as a result of bodily injury suffered by someone. Example of that would be loss of consortium claimants or wrongful death beneficiaries. And number three, subrogates. Those who have paid for medical care and get to directly subrogate for that. It is undisputed that none of those categories are involved in this case. Quest responses to try and invoke the rule of counter-prophorentum and say, well, it is not unreasonable for us to say that maybe it could extend to these kinds of cases. The problem is that brings us right to context. And controlling legal authority holds that in order for them to utilize the rule of counter-prophorentum, they have to show that their interpretation is reasonable. It is not reasonable under the context of the policy, which is tort liability. How do we know it is tort liability? Because Kentucky courts have said that CGL policies apply to torts and it is a tort context. What does this mean? It means simply that when terms will be interpreted consistently with their context, therefore, cause has to be something direct, not remote, not far away. So what happens when we look at a tort context? We look across the country, we look in Kentucky, and we say, what do we see when it comes to claims that have a close enough causal relationship to bodily injury? You want to guess? It is the same three categories. People who have actually suffered bodily injury, derivative claimants, and subrogates. This is a universal rule as we have set forth in pages 34-40 of our brief and has been applied in Kentucky. Thus, Quest's interpretation of the policy is not supported by the plain language or the structure of the policy, nor is it supported by the context of the policy, therefore, it is unreasonable. And because it is unreasonable, it cannot form the basis to implicate the rule of counter-prophorentum. And really, this just leaves us with whether or not there is any case law that is out there which would support their position. We have got some opioid cases, and Judge Bush, you have indicated that there is some difference between the outcome of some of those opioid decisions. They are going our way now, but some haven't gone that way. That may be true, but the overwhelming weight of historical authority addressing these issues, as we have set out in our brief at pages 40-45, and other contexts, unless you are actually seeking bodily injury or property damage, these kinds of economic losses will not trigger CGL coverage. We have case after case after case from Kentucky and across the country. One of those cases is this Court's decision in the Lennon case, which I commend you to read on page 40 of our brief. Now, if we were to go back to the beginning of this calendar year, some judges might be forgiven for thinking that the H.D. Smith was the last best pronouncement on coverage issues in this case. But since that time, the District Court issued its two decisions in this case. The Supreme Court of Delaware issued its decision in Rite Aid. The Supreme Court of Ohio issued its decision in the Masters Pharmaceutical. And all of these decisions were sharply critical of H.D. Smith in its analysis. And yes, Judge Gibbons, I think it is dead wrong. I think H.D. Smith is dead wrong on a variety of reasons. These cases expressly overruled or undermined multiple decisions relied upon by Quest, including the lower court decision in the Masters Pharmaceutical from Ohio's 1st Appellate District, the Discount Drug Mart case from Ohio's 8th Appellate District, and the Giant Eagle case from the Western District of Pennsylvania, which dealt with both Delaware and Pennsylvania law. It also revitalized a host of earlier decisions that applied a Ritchie-type analysis, finding no bodily injury under these kinds of circumstances. Six of which are set forth in our brief at page 51. As a result, I would contend to this Court that H.D. Smith is neither controlling nor persuasive. Rather, to the extent that H.D. Smith is not subsequently disclaimed by Illinois State and Federal Courts for the reasons we have set forth in our briefs, I will submit that it will likely end up as a lonely outlier in the appellate decisions addressing CGL coverage for governmental opioid lawsuits. Unless the Court has questions for me, I thank you for your time. Apparently no further questions, so thank you Mr. Garner. Thank you. Mr. Coltharp, you've got some rebuttal time left. I would direct the Court's attention to the fact that despite the two recent appellate court cases in Delaware and Ohio that have gone against us, this still remains an issue that has divided courts throughout the country. You have on one hand H.D. Smith, the Giant Eagle case out of Pennsylvania, the McKesson case out of California that was decided earlier this year that all went our way. So this continues to be an issue that has divided the courts that have addressed it. With respect to the preferred case and the Schneider case that were discussed by counsel, the Schneider case's focus in that case, the Schneider case's focus was on punitive damages in that case, which focuses on the wrongful conduct of the defendant and not the injuries to the plaintiff. That difference in context makes the bodily injury merely context for the conduct and not because of the conduct. Similarly in preferred, that case involved a misrepresentation about damage to a vehicle. So the damage was not caused by the misrepresentation, it existed and was hidden. So the misdeed there was in making the statement, the misrepresentation, not in causing the underlying damage. So the dealer in preferred was not even alleged to have caused the damage, but only to have misrepresented its existence. For that reason, any discussion that it makes, to the extent that it even makes it, concerning whether it is because of property damage, is ancillary to the decision itself. And as for the argument that because the policy in other places uses the term the in front of bodily injury, as some sort of implied holding by the policy that there has to be a single bodily injury, the language in those contexts is referring to the bodily injury  And so by using the, it is referring to the bodily injury that is invoked coverage. And so it could be multiple bodily injuries, it could be one, but it is not necessarily, it does not mean that there has to be an individualized bodily injury to an individual person, it just simply means that the bodily injury that it is referring to in latter provisions is referring back to the original bodily injury that invoked coverage. And then much has been made of the concession that we have made that the damages in this case to Quest, or excuse me, the damages alleged to be caused by Quest would not be for bodily injury. That is certainly true that we made that concession. However, that concession was in the context of the difference between because of and for. And so the prerequisite to the concession that the bodily injury on one hand having an arising from definition and for bodily injury having that equivalence definition. And so if the terms are properly defined as they are used in the English language as arising from and having an equivalence, then no, the damages alleged against Quest are not for bodily injury. However, if you conflate the terms, well certainly if because of means for, then that concession doesn't apply. So the concession is limited to the correct application of those two terms. And if the terms are not applied correctly, the concession doesn't hold. And as for the bituminous and diamond state cases, they weren't talked about in depth, but those cases arose from a claim that the HVA system in a building was defective, and the bodily injuries that were asserted there were simply, I mean in the bituminous case, the issue was whether the claim arose, or whether the damages were because of property damage, not bodily injury. And so they talked about the injuries to the individuals within the building as context for the overall harms caused by the failure of the HVAC system to operate properly, not as a grounds for recovery in the case. It was simply background information, not a chain in the causal link between act and injury. The same is true for diamond state. Although they expanded their argument to make the argument that it was both because of property damage and because of bodily injury, they didn't seek recovery for any injuries, any employees' illness-related damages or time off, and did not seek indemnity from an employment's illness-related claims against them. So again, the bodily injury was not a link in the causal chain, but was just a tangential fact that was presented as background to the claim itself. And I failed to mention initially in my initial argument that the known loss provision that was not gone into in depth with the Appley's argument, but I would simply reiterate our position that stated in our brief that the mere knowledge of a generalized risk of diversion is not enough to bar coverage under the known loss provision, which requires a specific knowledge of a specific loss in a specific instance. And so at most, the 2012 West Virginia suit that is used as the basis for this known loss argument, it arose from quest sales of opioids to a single pharmacy. And allegations related to the individuals that would have obtained those medications from that pharmacy within the borders of West Virginia. So it's entirely different from claims related to later sales in different jurisdictions related to different individuals and different governmental entities. I guess seeing there's no further questions, I'd conclude my argument by asking the court to carefully consider this issue and reverse the finding of the trial court and determine that both insurers have a duty to defend in this case. Thank you. Thank you to all counsel for your arguments today, for your briefing. Very interesting set of issues, obviously. We'll take the case under submission.